## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

JERRY AND JAYLENE CAPPS, in their
individual capacities and as
Personal Representatives of the
Estate of Christopher Capps,

CIV No. 12-5025

Plaintiffs,

vs.

**Complaint**

DAVID OLSON, in his individual
capacity, and PENNINGTON COUNTY,
a political subdivision of the State
of South Dakota,

Defendants.

## Parties, Jurisdiction and Venue

1. Plaintiffs Jerry and Jaylene Capps (the Capps) are residents of Pennington County, South Dakota. The Capps are the parents of the now-deceased Christopher Capps.

2. The Capps are co-personal representatives of the Estate of Christopher Capps.

3. Defendant Pennington County (the County) is a political subdivision of the State of South Dakota. The County is responsible for the practices, policies, and customs of the Pennington County Sheriff's Department. The County is responsible for the acts of its employees, agents, and officials while employed by the County and while acting within the scope of their employment.

4. Defendant David Olson (Olson) is, and was at all times relevant to this action, employed as a Deputy Sheriff with the Pennington County Sheriff's Department and engaged in the conduct complained of in the course and scope of his employment and under color of state law.  Olson is sued in his individual capacity.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, 28 U.S.C. §1343 and 28 U.S.C. §1367.

6. Venue lies in this District pursuant to 28 U.S.C. §1391(b).

## General Allegations

7. On or about May 2, 2010, shortly before 7:00 p.m., the Pennington County Sheriff's Department received a report of an altercation between an adult male and a juvenile male at 4800 Everest Road, Pennington County, South Dakota, which is the location of a mobile home park.

8. The adult male involved was Christopher Capps, a twenty-two year old Native American male (Christopher).

9. The County, through the Sheriff's Department, assigned Deputies Olson, Chris Hislip, and Rusty Schmidt to respond to the call.  An ambulance was also dispatched to the scene.

10. While Olson was en route to the scene, dispatch advised that the juvenile was having some trouble breathing but that the bleeding was controlled.

11. Despite being advised that the situation was controlled, while Olson was en route to the scene, he upgraded his response to "emergency mode" and activated his emergency equipment.

12. When Olson arrived on scene, one of the reporting parties told him that Christopher had left on foot and that another individual from the mobile home park, Darrell Scribner

(Scribner), had started to "chase" Christopher. Olson began to search, on foot, for Christopher.

13. Shortly after beginning his search on foot, Olson saw Christopher and Scribner in a field near the mobile home park, approximately 200-300 yards away from Olson. Christopher was running away from Scribner.

14. When he was approximately 20-30 feet away from Christopher, Olson shot Christopher five times.

15. After Christopher went down as a result of the shooting, Olson did not search Christopher or the scene for a weapon.

16. One of the five bullets that Olson shot entered Christopher's body at his left posterior shoulder. Olson was standing behind Christopher when he fired this shot into Christopher's backside.

17. Christopher died as a direct result of the gunshot wounds inflicted by Olson.

18. Christopher was unarmed during the alleged altercation with the juvenile, when he was on foot in the field, and when he was shot by Olson.

19. At no time did Christopher pose any threat to Olson or anyone else. Olson could not have held a good faith, reasonable belief that Christopher presented a threat to his, or anyone else's, safety.

20. Olson could not have held a reasonable, good faith belief that Christopher was armed.

21. Olson could not have had a reasonable, good faith belief that there was any need or justification to utilize deadly force against Christopher or to believe that the force he used against Christopher was anything but excessive.

22. Immediately after the shooting, and when the scene was secured, someone found a piece of brown driftwood beneath the grass near Christopher's body.

23. Olson and the County, in an effort to justify Olson's use of deadly force, determined, without any reasonable basis therefor, that Christopher was holding the piece of driftwood as a weapon when Olson shot Christopher.

24. By letter dated October 26, 2010, addressed and sent via certified mail to the Pennington County Auditor, the Capps notified the County of their potential tort claims pursuant to SDCL §3-21-2.

25. On October 27, 2010, the Pennington County Auditor received the notice described in Paragraph 24.

## Count 1: Violation of Rights Guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution Pursuant to 42 U.S.C. §1983 (Against Defendant Olson)

26. Plaintiffs incorporate and reallege Paragraphs 1-25 as if fully set forth herein.

27. Olson, acting under color of law and within the course and scope of his employment, utilized excessive and unnecessary force when he opened fire on Christopher.

28. A reasonable officer in Olson's situation would have known, in light of clearly established law, that Olson's use of deadly force in this situation violated Christopher's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures.

29. By using excessive, deadly force, Olson, acting under color of law, without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of his acts, caused Christopher's

death, in violation of Christopher's Fourth and Fourteenth Amendment rights.

30. As a result of the conduct alleged above, Plaintiffs are entitled to compensatory damages, including but not limited to mental and emotional distress, pain and suffering, out-of-pocket expenses, and loss of consortium under 42 U.S.C. § 1983.

## Count 2: Violation of Rights Guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution Pursuant to 42 U.S.C. §1983 (Against Both Defendants)

31. Plaintiffs incorporate and reallege Paragraphs 26-30 as if fully set forth herein.

32. The Fifth and Fourteenth Amendments to the United States Constitution guarantee substantive due process, which prevents the government, or governmental actors, from engaging in conduct that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty."

33. The Fifth and Fourteenth Amendments to the United States Constitution guarantee procedural due process, which prevents the government from depriving individuals of life or liberty without due process of the law.

34. Olson's use of deadly force against Christopher was so outrageous that it shocks the conscience, offends judicial notions of fairness, and is offensive to human dignity.

35. Olson's use of deadly force against Christopher constitutes a violation of Christopher's right to substantive due process as protected by the Fifth and Fourteenth Amendments.

36. Olson's use of deadly force against Christopher deprived Christopher of liberty and his life without due process of law,

in violation of Christopher's rights to procedural due process as protected by the Fifth and Fourteenth Amendments.

37. The Fifth and Fourteenth Amendments to the United States Constitution impose a duty upon the County, when supplying information pursuant to an investigation of a wrong perpetrated by a County employee under color of state law, to not conceal the perpetration of that wrong.

38. The location of, and facts surrounding, Olson's killing of Christopher were in the province and under the control of the County.

39. The County was, or should have been, cognizant of inconsistencies and conflicts in the physical characteristics and evidence at the location of the killing and Olson's explanation of events surrounding the killing.

40. The County facilitated an explanation of the killing that was unjustifiably favorable to the County and Olson.

41. Olson and other agents of the County conspired with one another, and others, to facilitate an explanation of the killing that was unjustifiably favorable to Olson and the County.

42. Olson and the County worked to conceal or mitigate Olson's actions.

43. As a result of the conduct alleged above, Plaintiffs are entitled to compensatory damages, including but not limited to mental and emotional distress, pain and suffering, out-of-pocket expenses, and loss of consortium under 42 U.S.C. § 1983.

**Count 3:  Promulgation and Retention of Policies in Violation of Rights Guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution Pursuant to 42 U.S.C. §1983 (*Monell* Claim Against Defendant Pennington County)**

44. Plaintiffs incorporate and reallege Paragraphs 31-43 as if fully set forth herein.

45. The County is responsible for the promulgation of policies and the implementation of training to maintain an effective sheriff's force that is capable and prepared to deal with interactions with the public.

46. The County had in effect, both before and at the time of the events alleged in this Complaint, policies, customs and procedures which operated to deprive Christopher of his constitutional rights.

47. The County established, authorized and/or tolerated actual or *de facto* policies and practices that encouraged, endorsed and/or permitted its agents and employees to violate the constitutional rights of Christopher and other similarly situated persons.

48. The unconstitutional policies, practices, customs and procedures of the County include, but are not limited to:

    a. Failing to properly train and supervise officers on the use of force;

    b. Failing to train and supervise officers as to their obligation to truthfully report occurrences rather than to falsify information to cover up misconduct;  and

    c. Failing to discipline officers who violate the constitution or law or otherwise transgress the rights of suspects during their investigations.

49. These policies, practices, and customs were maintained and implemented with deliberate indifference to the rights of Christopher, and others similarly situated, under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

50. As a result of these unconstitutional policies, Christopher was shot and killed by Olson.

51. As a result of the conduct alleged above, Plaintiffs are entitled to compensatory damages, including but not limited to mental and emotional distress, pain and suffering, out-of-pocket expenses, and loss of consortium under 42 U.S.C. § 1983.

## Count 4: Negligent Training and Supervision (State Law Claim Against Defendant Pennington County)

52. Plaintiffs incorporate and reallege Paragraphs 44-51 as if fully set forth herein.

53. The County had a duty under South Dakota law to properly train, supervise, control and retain their employees, including Olson.

54. The County failed to exercise reasonable care in training Olson on the use of force.

55. The County failed to exercise reasonable care in training Olson on the use of handgun firearms.

56. The County failed to exercise reasonable care in supervising Olson to ensure he acted within the confines of the Constitution of the United States, and all applicable federal and state laws.

57. Olson's use of deadly force against Christopher was unjustified and excessive for this specific situation, and was a result of inadequate training and supervision.

58. If a properly trained and supervised deputy had been on the scene, deadly force would not have been used.

59. As a result of the County's failure to properly train and supervise Olson, Christopher was killed.

60. The Capps have sustained damages as a result of the County's failure to properly train and supervise Olson, including, but not limited to, mental and emotional distress, pain and suffering, and loss of consortium.

## Count 5: Assault and Battery (State Law Claims Against Both Defendants)

61. Plaintiffs incorporate and reallege Paragraphs 52-60 as if fully set forth herein.

62. Olson intended to cause a harmful and offensive contact with Christopher.

63. Olson's conduct caused Christopher to fear such contact would immediately occur.

64. Such contact did immediately occur and caused the death of Christopher.

65. Christopher did not consent to the intended or actual contact.

66. Olson's use of deadly force against Christopher in these circumstances was unlawful because Olson used force greater than necessary to carry out his duties.

67. Olson committed these acts within the course and scope of his employment with Pennington County and the County is therefore liable under *respondeat superior*.

68. As a result of Olson's commission of the acts alleged herein, Christopher died and Plaintiffs are entitled to compensatory damages, including, but not limited to, mental and emotional distress, pain and suffering, and loss of consortium.

## Count 6: Wrongful Death (State Law Claim Against Both Defendants)

69. Plaintiffs incorporate and reallege Paragraphs 61-68 as if fully set forth herein.

70. Olson's use of deadly force against Christopher was unjustified, excessive, and negligent and caused the wrongful death of Christopher.

71. Olson was acting within the scope of his employment when he killed Christopher.

72. The County established, authorized, and/or tolerated policies and practices that were intended to and did encourage, endorse and permit their agents and employees to violate the constitutional rights of Christopher.

73. The County negligently supervised and trained Olson, resulting in Christopher's death.

74. As a result of the Defendant's conduct as alleged above, Christopher died.

75. By reason of Christopher's wrongful death, the Capps have been deprived of his support, comfort, society, counsel, and services, all to their damage in an amount to be determined at trial.

## Count 7: Punitive Damages (Against Both Defendants)

76. Plaintiffs incorporate and reallege Paragraphs 69-75 as if fully set forth herein.

77. Defendants' conduct was intentional, wanton, willful, oppressive, and malicious.

78. Defendants acted with evil motive or intent or with a reckless or callous indifference to the federally-protected rights of Plaintiffs.

79. As a result of Defendants' conduct, Plaintiffs are entitled to exemplary damages, to be determined at trial.

## Prayer for Relief

Wherefore, Plaintiffs pray for relief as follows:

A. An award of compensatory damages, including but not limited to damages for pecuniary loss, reasonable medical, burial, and out-of-pocket expenses, mental anguish, emotional distress, pain and suffering, loss of consortium, and such other loss as determined by the jury;

B. Punitive damages;

C. An award of attorney's fees, expert fees, and costs, pursuant to 42 U.S.C. Section 1988 and any other applicable law;

D. Pre- and post-judgment interest at the statutory rate; and

E. Any further or other relief the Court deems just and proper.

## PLAINITFFS DEMAND TRIAL BY JURY

Dated this 19th day of April, 2012.

BANGS, McCULLEN, BUTLER,
FOYE & SIMMONS, L.L.P.

BY: _____
SARAH BARON HOUY
MICHAEL M. HICKEY
TERRY L. HOFER
ERIC J. PICKAR
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD  57709-2670
(605) 343-1040
sbaronhouy@bangsmccullen.com
mhickey@bangsmccullen.com
thofer@bangsmccullen.com
epickar@bangsmccullen.com
**ATTORNEYS FOR PLAINTIFFS**